IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENNIS TRANSPORTATION COMPANY, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:08-CV-2206-BH |
| JUDY J. RICHTER, et al., | § § § | |
| Defendants. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order of reassignment dated October 20, 2010, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is *Defendant Dynasty Transportation, Inc.'s Motion for Summary Judgment*, filed April 28, 2011 (doc. 40). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Ennis Transportation Co. initiated this action in state court against Judy J. Richter and Robert L. Richter (collectively "the Richters"), Overcomers N Overflow, Inc. ("Overcomers"), and Dynasty Transportation, Inc. ("Dynasty") on December 4, 2008. It asserted eight causes of action, including business disparagement, wrongful use of confidential information, conversion, misappropriation of trade secrets, tortious interference with business relationships, breach of loyalty, breach of fiduciary duty, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Each cause of action alleges unlawful conduct by the Richters and their alleged alter ego, Overcomers (collectively "Richter defendants"), and a separate section entitled "Agency" alleges that the Richter defendants are "independent contractors, agents, and/or employees of Dynasty," and

were "operating within the scope of that agency when the alleged acts and omissions occurred." The defendants timely removed the action to this court on December 12, 2008, on the basis of federal question jurisdiction.

As alleged in the complaint, Plaintiff is in the business of transporting property through motor vehicle for commercial customers and shippers. The Richter defendants allegedly served as its agents since December 12, 2006, and executed an exclusive freight sales agreement with it on November 27, 2007, that included a confidentiality agreement and a covenant not to compete. During their agency, they allegedly had access to, and control of, confidential information concerning its customer, employees and drivers, and their shipping and driving schedules, and would not have had access to that information but for their employment with Plaintiff.

Plaintiff claims that on September 2, 2008, the Richter defendants ceased their employment with it, immediately became affiliated with Dynasty, began contacting companies and owner operators that were in business with Plaintiff, and made untrue representations that Plaintiff was not providing adequate cargo insurance in order to redirect their business to Dynasty. They also allegedly made those same misrepresentations to employees and other individuals so that they would cease working with Plaintiff. Because of those misrepresentations, many of the owner operators and companies allegedly withdrew from their ongoing business relationships with Plaintiff.

Plaintiff also claims that the Richter defendants misappropriated proprietary and confidential information consisting of driver contact information, customer contact information, price lists, rate, schedules, contracts, customer lists, schedules, and information about employee compensation. The Richter defendants and Dynasty allegedly used that information to interfere with contracts and relationships that Plaintiff had with its independent contractors, owner operators, drivers, customers,

2

and employees. They also allegedly tortiously interfered with Plaintiff's business by recruiting its employees and agents away from their jobs.

Dynasty now moves for summary judgment on all of Plaintiff's claims on the ground that it is not vicariously liable for any actions of the Richter defendants. It also argues that there is no evidence to support Plaintiff's claims for misappropriation, conversion, business disparagement, and tortious interference. As noted, however, Plaintiff has alleged direct liability only against the Richter defendants and has implicated Dynasty only under an agency theory of liability. Consideration of whether Dynasty is directly liable on any of Plaintiff's specific claims is therefore unnecessary.

## II.  EVIDENTIARY OBJECTIONS (DOC. 45)

DISD moves to strike portions of an affidavit attached to Plaintiff's response to the motion for summary judgment, and three exhibits attached to that affidavit, based on several evidentiary objections. Because the affidavit and the exhibits, even if considered, do not affect the disposition of the pending motion for summary judgment, Dynasty's objections are **OVERRULED** as **moot** and the motion to strike is **DENIED**. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).

## III.  MOTION FOR SUMMARY JUDGMENT (DOC. 40)

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material."

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the

record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## IV. VICARIOUS LIABILITY

Dynasty moves for summary judgment on grounds that it is not vicariously liable for any of the unlawful acts committed by the Richter defendants.

### A. Acts of Overcomers and the Richters in their Corporate Capacities

Dynasty essentially argues that it is not vicariously liable for the torts of Overcomers, or the Richters in their corporate capacities, because Overcomers is nothing more than an independent contractor over which it had no right of control.[1]

Under the doctrine of respondeat superior, an employer or principal is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d. 513, 541–42 (Tex. 2002) (citing *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996)). A "frequently proffered justification for imposing such liability is that the principal or employer has the right to control the means and methods of the agent or employee's work." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). "Because an independent contractor has sole control over the means and methods of the work to be accomplished, however, the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person." *Id.*

---

[1] Dynasty initially argues that the Richter defendants were independent contractors over whom it had no control. In its reply brief, however, Dynasty delineates Overcomers' status as an independent contractor, while the Richters were Overcomers' employees, owners, officers, or agents. Dynasty entered into an independent contractor agreement with Overcomers alone, and while Judy Richter signed the agreement, she signed it on behalf of Overcomers in her corporate capacity as its secretary and vice president.

5

Whether a person is an employee, agent, or independent contractor, and therefore whether vicarious liability applies, is dependent on whether the person has the right to control the means and methods of the work to be accomplished. *See Wolff*, 94 S.W.3d at 542 (citing *Akins*, 926 S.W.2d at 290); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). A court may consider the following factors in determining the extent of the right to control: (1) the independent nature of the person's business; (2) the person's obligation to furnish necessary tools, supplies, and material to perform a job; (3) the person's right to control the progress of the work, except as to final results; (4) the time for which the person is employed; and (5) the method of payment, whether by time or by the job. *Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005) (quoting *Indus. Indem. Exch. v. Southard*, 138 Tex. 531, 160 S.W.2d 905, 906 (1942)).

"A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties." *Farlow v. Harris Methodist Fort Worth Hosp.*, 24 S.W.3d 903, 911 (Tex. App.— Fort Worth 2008, pet. denied) (citations omitted). Evidence that the parties did not intend an independent contractor relationship can come from the contract itself or from extrinsic evidence. *Id.* In any event, the "right to control" is the "supreme test" for determining whether a person is an agent, employee, or independent contractor, and therefore whether the rule of vicarious liability applies. *See Wolff*, 94 S.W.3d at 542 (citing *Akins*, 926 S.W.2d at 290).

To meet its initial summary judgment burden, Dynasty proffers its Commission Terminal Agreement with Overcomers; it is signed by Judy Richter in her capacity as Overcomers' vice president and secretary. (Mot. App. at 20–34.) The agreement classifies Overcomers as "an

6

independent contractor, with the authority and right to direct and control all of the details of the work and services to be performed," with Dynasty "being interested only in the results obtained." (*Id.* at 25.) While the agreement requires Overcomers to maintain an adequately staffed office and have a phone number in Dynasty's name, it makes Overcomers responsible for paying the costs and expenses of maintaining that office. (*Id.* at 25.) It places all of Overcomers' employees, agents or representatives under the sole control of Overcomers at all times, and specifically states that Dynasty has no right or authority to supervise or instruct them. (*Id.* at 25–26.) It also provides that Overcomes retains all responsibility for hiring supervising, training, and firing its personnel and workers, for setting their wages, hours and working conditions, and for adjusting their grievances. (*Id.* at 26.) Overcomers assumes full responsibility in the agreement, for all of its employees in performing all if its obligations under the agreement, and for acting within applicable laws and regulations. (*Id.* at 26, 28.) As to compensation, the agreement requires Dynasty to pay Overcomers a commission by the job, rather than compensate it for time spent. (*Id.* at 20–23.) The agreement specifically limits Overcomers authority to enter into any contract or agreement on behalf of Dynasty or extend credit in its name. (*Id.* at 25.) Finally, the agreement states the "understanding and intention of the parties that no relationship of master and servant or employer and employee or principal and agent shall exist between [them]." (*Id.* at 26.) Given these terms, Dynasty has met its initial summary judgment burden to show that Overcomers is an independent contractor with the right to control the means and methods of the work to be accomplished, and therefore that Dynasty is not vicariously liable for the acts of Overcomers, or the Richters in their corporate capacities.

      The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish a genuine issue of material fact for trial. Because Plaintiff does not even

7

dispute, much less provide evidence contradicting Dynasty's proof that Overcomers is nothing more than its independent contractor, it has failed to meet its summary judgment burden to create a genuine issue of material fact that Dynasty is vicariously liable for the claims against Overcomers, or the Richters in their corporate capacities.[2]

**B. Acts of the Richters in their Individual Capacities**

To the extent that Plaintiff seeks to find Dynasty liable for the acts of the Richters in their individual capacities, Dynasty argues that it is not vicariously liable for those acts because it had no relationship with the Richters in their individual capacities.[3] Dynasty proffers evidence showing that Judy Richter is the vice president and secretary of Overcomers and signed the agreement between Dynasty and Overcomes in that capacity. (Mot. App. at 33.) It also presents evidence showing that Dynasty did not hire, retain, or control Overcomers' representatives, employees, or agents, did not set their schedules, did not provide them equipment or tools, did not pay them a salary, had no right to direct and control Overcomer's work, or to supervise or give instructions to the employees or agents of Overcomers. (*Id.* at 18, 25–28.) Dynasty argues that the only relationship that it had with

---

[2] Plaintiff's response, like its complaint, asserts almost all of its allegations against the Richter defendants. The only argument it makes with respect to Dynasty is that Dynasty contracted with the Richter defendants, and utilized its customer, equipment, and driver information, even after being notified that they had a pre-existing contract with Plaintiff. As discussed, Plaintiff never asserted the count entitled "tortious interference with business relationships" directly against Dynasty; it only asserted vicarious liability against it. The count specifically alleged that *the Richter defendants* (emphasis added) tortiously interfered with the contractual and business relationships between Plaintiff and its drivers, employees, and customers. It never alleged that Dynasty tortiously interfered with Plaintiff's contract with the Richter defendants. Plaintiff cannot assert new theories of liability at this late stage of litigation, especially without seeking leave to amend its complaint.

[3] Although Dynasty raised this argument for the first time in its reply, Plaintiff has had an opportunity to respond. It essentially filed a sur-reply in the form of its response to Dynasty's evidentiary objections. *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) (noting practice of declining to consider arguments raised for the first time in a reply brief because nonmovant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990)).

8

the Richters was in their corporate capacity on behalf of Overcomers. Dynasty has met its initial summary judgment burden to show that it did not have any relationship with the Richters in their individual capacities and therefore cannot be held liable for any unlawful acts of the Richters in their individual capacities. Because Plaintiff has not responded to this specific argument, it has failed to create a genuine issue of material fact that Dynasty is vicariously liable on the claims against the Richters in their individual capacities.

## V. CONCLUSION

Dynasty's motion for summary judgment is **GRANTED**, and Plaintiff's vicarious liability claims against it for business disparagement, wrongful use of confidential information, conversion, misappropriation of trade secrets, tortious interference with business relationships, breach of loyalty, breach of fiduciary duty, and violation of the Computer Fraud and Abuse Act are **DISMISSED** with prejudice.

**SO ORDERED** on this 22nd day of August, 2011.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE